THE PEOPLE *v.* VILARÓ.

APPEAL from the District Court of Ponce.

No. 75.—Decided June 18, 1907.

CRIMES AGAINST THE PUBLIC PEACE.—Every person who wilfully disturbs or disquiets any assamblage of people met for any lawful purpose, such as religious worship, is guilty of disturbing the public peace.

ID.—The evidence taken in the case at bar having shown that the accused, voluntarily and with intent to molest and disturb the services held in a neighboring church, played his phonograph during the hours when such services were held, he is guilty of the crime of disturbing the public peace, because although, generally, music can not be classified as noise, nevertheless, for the purposes of section 358 of the Penal Code, it may, under the conditions of time and place and in relation with the state of mind of persons hearing the same, become a noise, as occurs in the present case.

The facts are stated in the opinion.

*Mr. Alvarez Nava* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

This case originated in the Municipal Court of Ponce where the defendant, Juan Vilaró, was convicted upon the following complaint:

United Brethren Church, Ponce, Porto Rico. N. H. Huffman, Pastor. Honorable Municipal Judge of the city of Ponce.—The undersigned, Nathan Harlan Huffman, a resident of this place, living in the place called 'Cuatro Calles', files a sworn complaint before you against Juan Vilaró, of this place, living on Marina Street, because he has been wilfully and maliciously, for two or three weeks, disturbing the religious services connected with the worship of 'The United Brethren in Christ', of which the complainant is an officiating minister. This disturbance is made by means of a phonograph which he uses in his dwelling situated next to the building occupied for the purposes of such worship, and which he places in such manner as to get it as close as possible, turning the horn toward the place where said services are conducted. Herminio Rodríguez, Pedro Pagán, Bonifacio Ramos, and others of this place are witnesses. Ponce, December 20, 1906. Respectfully, N. H. Huffman.

"Sworn to before me, Augusto Pasarell, Acting Municipal Judge."

Vilaró took an appeal from the judgment rendered by said court to the district court, which in turn sentenced him on January 21, 1907, after a formal trial, to pay a fine of $10, or in default of payment, to be imprisoned for 10 days, with the costs of both instances.

The defendant, being likewise dissatisfied with this judgment, took an appeal therefrom to this Supreme Court, and he has appeared here with a statement of the case approved by the lower court.

Counsel for said appellant has, in addition, presented a brief, which he argued at the trial, seeking the reversal of the judgment of conviction, which petition the *fiscal* contested at the hearing, and prayed that the judgment appealed from be affirmed.

The offense involved is that defined in section 358 of the Penal Code—that is to say, a disturbance of the public peace.

One of the ways of committing this offense is by wilfully disturbing or interfering with an assemblage of people met for some lawful purpose, such as religious worship, by noise.

Juan Vilaró owns a phonograph which, according to the testimony of a number of witnesses, reproduces good music and the voices of artists of universally recognized merit; and he had the indisputable right to amuse himself and his family in this way within his home and at hours suitable to the music which the apparatus produces. But Juan Vilaró had for two or three weeks prior to the complaint been playing said phonopragh from 7.30 in the evening, when religious services were being held in the church of the United Brethren of Christ, which church is very near his house, and he placed the apparatus in the dining-room of his dwelling in such manner, with the doors and windows open and with the horn pointed to the church, that according to the personal inspection made by the judge himself, who took up a position in the second nave where the services referred to in the complaint were conducted, that the sound was heard with such intensity that it might prevent the congregation from understanding the words of a preacher, assuming both to be occupying their usual places.

We thus see that the sound of the phonograph, if played during the hours of service, disturbed in their worship the persons assembled in the church, and that it was played at night and in those moments, there can be no doubt, because counsel for the defense himself acknowledges the fact, as is clearly deduced from the evidence introduced in this case.

The pastor, N. H. Huffman, complained of this disturbance to the acting municipal judge, Augustín Pasarell, and this official summoned Vilaró and informed him of what the minister of the sect in question had informed him, relating the disturbance which the phonograph caused them in the church, and Vilaró replied that, as a mater of fact, he did play it in his house because he considered that he had a right to do so; and upon the judge insisting that he was wilfully

disturbing the religious services, as complained of, Vilaró replied that he could do as he pleased in his house.

Witness Herminio Rodríguez, who asserts that he is a preacher of the gospel and that one night when services were being held and some one else was preaching and the phonograph was disturbing them, he went to the house of Vilaró to request him to stop the music until the services were concluded, and the latter answered him in a violent manner, adding that he did it with the intention of interrupting the services.

Pedro Pagán, one of the members of the congregation, also asked Vilaró to stop the music while the services were being held, but the latter answered that he did not wish to do so, that he was in his own house, and upon being informed that he was disturbing the services, he said that that was his intention and that they might file a complaint against him, if they so desired.

The testimony of D. P. W. Drury, a Protestant minister of Juana Díaz, a witness for the prosecution, who substituted Pastor Huffman on an occasion when he was absent, only reveals that he was more fortunate than the latter and than Rodríguez, Pasarell and Pagán in his efforts with Vilaró, because the latter informed Drury that he did not play the phonograph with the intention of disturbing the services, and that he would be more careful thereafter; but this statement does not controvert, but strengthens, the evidence showing that the phonograph was played at nighttime during the hours of worship, and that its sound interfered with the services, and if at the time of the friendly complaint of Drury, Vilaró did not intend to disturb the services, his good intention did not last long, as shown by acts subsequent to this interview.

The witnesses for the defense do not in any manner destroy the testimony of the above-mentioned persons.

The circumstance that religious services were never suspended on this account does not counteract the fact of the dis-

turbance wilfully caused by the noise, which is that constituting the triable act.

The word "wilfully", when applied to the intent with which an act is done implies simply a purpose or willingness to commit the act, according to the final provisions of the Penal Code under title 20.

A malicious and guilty intention is presumed from the manner and deliberation with which an unlawful act is committed for the purpose of injurying another, it being indispensable for the existence of an offense that there be a union or joint operation of act and guilty intention, as established by sections 11 and 12 of the Penal Code.

There is no doubt that Vilaró had the deliberate intention of disturbing and interfering with the religious services, and wilfully—that is to say, knowing that he was interfering and disturbing—he persistently played his phonograph during the hours of the night when the persons assembled held their religious services, without acceding to the requests and observations made to him after he had been informed as to the extent his phonograph disturbed and interfered with the services. Wilfulness was therefore present, the intimate relation between the acts of Vilaró and his guilty intention being clear.

It is true, as counsel for the defendant says, that he was never heard to play the phonograph during the morning services, but this does not destroy the fact that during the hours of the night, while services were being held, he systematically played it with the intention of disturbing them, and this guilty intention did not result from deductions, but from his own statements, as has been shown above.

Otherwise, the instant that he had been informed that he disturbed the services, either he would not have played it during such services; or he would have played it in another part of his own house, where, by reason of the distance, it might be presumed that the sounds produced by the appara-

tus would not be heard so loudly. This would have been a discreet and plausible course to have pursued.

We agree with the defense that music cannot be considered a noise, because the latter is an inarticulate and confused sound, more or less loud; but music, for the purposes of section 358 of the Penal Code, may become a noise according to the conditions of place and time and in relation with the state of mind of the persons who hear it.

A phonograph, no matter how good it is, if its horn is placed in the open door of a church and plays while a minister is preaching, and when it must be assumed that the congregation is anxious to hear his words, then, at such time, in such place, and for such persons, that music momentarily loses its melody and is converted into noise, because it prevents them from hearing what is said by the preacher, to hear whom they are assembled at the time.

Under other conditions this phonograph would delight such persons with its harmonies.

The appellant alleges that if he became a complainant on the same grounds, that the religious songs and the sound of the organ of the church disturb and molest his family, and his right to the peace and tranquility of his home were violated, could a judgment be rendered against the congregation of the church for the crime of disturbing the public peace? If this cannot be so, he adds, then neither can he be sentenced in the case appealed from, becauuse the circumstances are identical and both rights are entitled to equal respect.

We deny that the circumstances in the actual case in question and the supposed case presented as an argument are alike.

The latter does not come within the purview of section 358 of the Penal Code, which is that applied to Vilaró.

In this case it has been shown that Vilaró wilfully and with the intention of disturbing and molesting the religious services in the adjoining church played his phonograph at

night while such services were being held, and Vilaró is guilty of the offense defined.

In view of the reasons stated, the judgment of the District Court of Ponce of January 21 of the current year should be affirmed, and the costs of this appeal should be taxed against the appellant, Juan Vilaró.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, MacLeary and Wolf concurred.